NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: December 10, 2024

S24A1063.  WOOD v. THE STATE.

PINSON, Justice.

Tabitha Wood killed her fiancé, Leroy Kramer; his body was found two months later in the home he and Wood had shared. At trial, Wood claimed self-defense, testified about the long history of Kramer's violence toward her, and presented testimony from an expert who concluded that Wood suffered from battered person syndrome. A jury convicted her of malice murder and other crimes.[1]

---

[1] Kramer died on or about April 1, 2022. On February 15, 2023, a Hall County grand jury returned an indictment charging Wood with malice murder (Count 1), two counts of felony murder (Counts 2, 3), aggravated assault (Count 4), exploitation of an elder person (Count 5), concealing the death of another (Count 6), and financial transaction card theft (Count 7). After a jury trial from March 13 to 24, 2023, the jury found Wood guilty of all counts. On March 24, 2023, the trial court sentenced Wood to life in prison for malice murder (Count 1), a consecutive prison sentence of ten years for concealing the death of another (Count 6), and a concurrent sentence of three years for transaction card theft (Count 7). The trial court purported to merge the remaining counts. Although the felony murder counts were actually vacated by operation of law, and

On appeal, Wood contends that the trial court erred by not allowing her to introduce witness testimony about Kramer's acts of violence toward other women under OCGA § 24-4-405 (b) (Rule 405), and that not admitting this evidence violated her constitutional right to a complete defense. But the trial court did not abuse its discretion by not admitting this evidence of Kramer's prior acts of violence under Rule 405 (b): that rule allows proof of specific instances of a victim's conduct to establish the victim's character or a trait of character when it is an essential element of a defense, but Wood sought to support a claim of self-defense with this evidence, and a victim's violent character is not an essential element of self-defense. As for her constitutional claim, which we review only for plain error, Wood has not shown that the trial court's application of the standard

---

the trial court may have committed a merger error with respect to the other counts, we decline to address that issue here because any error benefited the defendant and the State has not challenged the merger of these counts. See *Ware v. State*, 302 Ga. 792, 794-795 (3) (809 SE2d 762) (2018); *Dixon v. State*, 302 Ga. 691, 697-69 (4) (808 SE2d 696) (2017). Wood timely filed a motion for new trial, which was later amended. After a hearing, the trial court denied the motion for new trial on October 30, 2023. Wood timely filed a notice of appeal on November 29, 2023. The appeal was docketed to the August 2024 term of this Court and was orally argued on September 17, 2024.

evidentiary rules at issue here was a clear and obvious violation of her constitutional rights. So Wood's convictions are affirmed.

1. The evidence at trial showed the following. Wood met and moved in with Kramer sometime in 2020, and they were engaged in February 2021. They lived in a home that had been owned by Kramer's late wife, and the homes on either side were occupied by his late wife's family members. In early June 2022, the family members realized that no one had seen or heard from Kramer in months. On June 4, 2022, Kramer's stepdaughter, who lived out of state, called the Hall County police and adult protective services to request a welfare check. When a local sheriff's deputy went to Kramer's home on June 6 for a wellness check, the home appeared "abandoned" and no one came to the door.

Kramer's stepdaughter filed a missing-person report with the Hall County police. When deputies returned to the home on June 7 in response to the report, Wood came outside after "several minutes." She told the deputies that she last saw Kramer in April and that he had died by suicide.

3

In the home, investigators found Kramer's decaying body in the bedroom. Based on the level of decomposition, the medical examiner who performed Kramer's autopsy estimated he had been deceased for anywhere from "weeks to months," and the exact amount of time would depend on environmental factors not known to the medical examiner. The medical examiner concluded that Kramer died from traumatic injuries to his neck and that traumatic injuries to his chest were also a "significant factor" that contributed to his death. Investigators opined that a three-pound dumbbell found near Kramer's body was likely used to cause these injuries.

Wood testified that she and Kramer got into an argument that escalated to his using physical violence against her on April 1, 2022. At some point during the fight, Wood "blacked out." Eventually she kicked Kramer, got away from him, and ran into the woods near their home where she stayed until morning. She testified that Kramer was alive when she left their home because he was yelling "B**ch, I'm going to kill you." But sometime after she returned to their home the next day, she "realized he was dead." Wood said she

4

did not want to accept his death and did not report it to the police.

Wood also testified extensively about Kramer's violence toward her during their relationship. And she presented expert testimony from a psychologist who had evaluated her and concluded she suffered from battered person syndrome throughout her relationship with Kramer, including on the night he was killed.

2. Wood contends that the trial court erred in not admitting evidence about Kramer's prior acts of violence against two other women through the testimony of other witnesses. She claims that this evidence should have been admitted under Rule 405 (b), a claim we review for abuse of discretion, see *White v. State*, 319 Ga. 367, 376 (3) (903 SE2d 891) (2024), and that the failure to admit that evidence violated her constitutional right to a complete defense. Wood raised this constitutional claim for the first time in her motion for new trial, so we review it for plain error. See OCGA § 24-1-103

(d); *State v. Herrera-Bustamante*, 304 Ga. 259, 263 (2) (b) (818 SE2d 552) (2018).

(a) Before trial, Wood filed a "Notice of Intent to Present Evidence of Acts of Violence by the Victim" under OCGA §§ 24-4-404 (Rule 404) (a) and (b) and Rule 405. The notice specified acts of violence Kramer had committed against three women: A.S., J.P., and S.W. After a pre-trial hearing, the court ruled that if Wood made a prima facie showing of self-defense, she could then testify to her personal knowledge of Kramer's prior violent acts against other women to show "her reasonableness of fear or justification for self-defense." And it ruled that she could introduce testimony from other witnesses about Kramer's character for violence in the form of reputation and opinion testimony. See OCGA § 24-4-405 (a) ("In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion.").

At trial, the court ruled that Wood made a prima facie showing of self-defense, so it allowed her to testify to her personal knowledge

6

of Kramer's violent acts against other women to show her own state of mind.[2] The trial court maintained its earlier ruling that Wood could call witnesses to testify about Kramer's reputation but ruled that the witnesses could not testify about Kramer's specific bad acts toward other women. See OCGA § 24-4-405 (a)-(b).

Wood testified that Kramer "told [her] about the things he had done to women and he would laugh about it." He spoke to her about his relationships with three women — A.S., S.W., and J.P. According to Wood, Kramer told her that he and A.S. had lived together, and Kramer had stalked, raped, and threatened A.S. He would go to A.S.'s job, follow her, and threaten her. Wood and Kramer once ran into A.S., and A.S. looked "kind of scared" and "very shocked." Kramer also told Wood that he had dated S.W. and "pulled a gun on" her. And he told her that he lived with J.P. at one point and "pulled a gun on" her too. Wood said that when Kramer spoke to her about what he had done to these other women, it was "very shocking" and

_____

[2] The trial court did not cite a specific rule of evidence to support its ruling, and we express no opinion on the admissibility of this evidence, which has not been challenged on appeal.

7

felt threatening. She testified that hearing from Kramer about what he had done to these other women made her even more fearful of him because he was doing the same types of things to her.

After Wood testified, she proffered testimony from A.S. and S.W.'s children (S.W. was deceased).[3] The proffer from S.W.'s children did not include testimony about Kramer "pulling a gun" on S.W. or any other specific act by Kramer. During her proffer, A.S. testified that she had lived with Kramer and he was abusive. She left Kramer's home after he raped her and became physically violent.

After this proffer, Wood withdrew the request to introduce reputation or opinion testimony through these witnesses but maintained that the trial court should allow her to call them to testify about Kramer's prior acts of violence against S.W. and A.S. She also moved to introduce this testimony as prior consistent statements under OCGA § 24-6-613 (c). The trial court maintained its prior ruling that Wood could not introduce extrinsic evidence of specific acts

---

[3] Wood did not proffer extrinsic evidence of Kramer's violence toward J.P.

8

through these witnesses. And the trial court also rejected Wood's new argument that the testimony was admissible under Rule 613, because it concluded that the witnesses' testimony would be "improper bolstering" and neither witnesses' testimony was a "prior consistent statement."[4]

(b) Under our Evidence Code, the accused may offer evidence of a "pertinent trait of character of the alleged victim" to prove "action in conformity therewith" in limited circumstances. OCGA § 24-4-404 (a) (2). When such evidence is admissible, it generally may be introduced only "by testimony as to reputation or by testimony in the form of an opinion." OCGA § 24-4-405 (a). See also *Copeland v. State*, 316 Ga. 452, 458 (3) (b) (888 SE2d 517) (2023) (explaining that Rules 404 (a) and 405 are read together). That said, the accused may

---

[4] On appeal, Wood argues that the trial court erred in concluding that the other witnesses' testimony would be "improper bolstering." But, as noted above, that ruling was in response to Wood's motion to admit those statements as "prior consistent statements" under OCGA § 24-6-613 (c), and Wood no longer contends on appeal that those statements should have been admitted as prior consistent statements under Rule 613 (and in fact conceded at oral argument before this Court that the statements would not have been properly admitted under that Rule). Thus, the trial court's "improper bolstering" ruling is not properly before us on appeal.

offer proof of "specific instances" of the victim's conduct if the trait is "an essential element of a charge, claim, or defense." See OCGA § 24-4-405 (b).

The testimony from S.W.'s children and A.S. about specific instances of Kramer's conduct was not admissible under Rule 405 (b). We have held before that "[a] victim's violent character is *pertinent to*" a defendant's claim of self-defense, but it is "not an *essential element* of" that defense. *Beck v. State*, 310 Ga. 491, 498 (3) (852 SE2d 535) (2020) (emphasis in original). Thus, evidence of a victim's character for violence generally may be admitted only in the form of reputation or opinion testimony under Rule 405 (a), and not by proof of "specific instances" of the victim's conduct under Rule 405 (b). See OCGA §§ 24-4-404 (a), 24-4-405 (a)-(b). So the trial court did not abuse its discretion by not admitting testimony from S.W.'s children and A.S. about specific instances of Kramer's conduct. See *Beck*, 310 Ga. at 498 (3).[5]

---

[5] This Court has reserved the question whether prior acts of violence by a victim could be admitted if they are relevant to a purpose other than to prove

10

(c) Wood also contends that not allowing her to introduce the other witnesses' testimony about Kramer's prior acts violated her constitutional rights, "such as her right to a complete defense and to call witnesses in her own defense," citing the Sixth Amendment to the United States Constitution. She points out that the trial court allowed her to testify about what Kramer told her about his prior acts of violence against other women, and so she should have been allowed to call other witnesses to testify about Kramer's prior acts of violence to show that she was credible.

Wood raised this constitutional claim for the first time in a motion for new trial, so we review it only for plain error. See OCGA § 24-1-103 (d); *Herrera-Bustamante*, 304 Ga. at 263 (2) (b). To establish plain error, the trial court must have committed an error that

---

the victim's "character . . . in order to show action in conformity therewith." See OCGA § 24-4-404 (b). See, e.g., *Ward v. State*, 318 Ga. 884, 902 (3) (c) (901 SE2d 189) (2024) (assuming without deciding that Rule 404 (b) applies to evidence regarding the other acts of a victim, a victim's prior violence may be admissible to "establish the defendant's state of mind and the reasonableness of the defendant's use of force") (citation and punctuation omitted); *Copeland v. State*, 316 Ga. 452, 459 & n.7 (3) (b) (888 SE2d 517) (2023) (noting, in the context of an ineffective assistance claim, that the admissibility of this evidence was "an open question" in Georgia). That question is not properly before us here, however, because Wood makes no such argument on appeal.

was not "affirmatively waived"; was "clear or obvious, rather than subject to reasonable dispute"; and affected the defendant's "substantial rights." See *White v. State*, 305 Ga. 111, 119-120 (3) (823 SE2d 794) (2019) (quoting *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011)). If the defendant establishes each of those things, then the appellate court has the discretion to remedy the error if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id. at 120.

Wood has failed to establish that the trial court committed a clear or obvious error by not allowing her to call other witnesses to testify about Kramer's prior acts. The Due Process Clause of the Fourteenth Amendment to the United States Constitution "guarantees criminal defendants a meaningful opportunity to present a complete defense," but a defendant's right to present relevant evidence is "subject to reasonable restrictions." *Burns*, 306 Ga. at 121-122 (2). As the United States Supreme Court has explained, state-law rules excluding evidence from criminal trials "do not abridge an accused's

12

right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Id. at 122 (2) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (118 SCt 1261, 140 LE2d 413) (1998)). Wood makes no argument that Rule 405 or the trial court's application of it is arbitrary or disproportionate to its purposes. Nor does she offer any authority in support of her specific assertion that not allowing her to call the other witnesses to support her credibility violated her right to a complete defense. She has therefore failed to establish that the trial court committed a clear or obvious error. See *Sconyers v. State*, 318 Ga. 855, 859 (1) (901 SE2d 170) (2024) ("For an error to be obvious for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." (quoting *Grier v. State*, 313 Ga. 236, 242 (3) (b) (869 SE2d 423) (2022))).

*Judgment affirmed. All the Justices concur.*