NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 3, 2026

S25A1464. BIGGS v. THE STATE.

ELLINGTON, Justice.

Jalen Shakur Biggs appeals his conviction for malice murder in connection with the shooting death of Keith Basham.[1] Biggs contends that the trial court abused its discretion by excluding evidence that Basham had assaulted the mother of Biggs's fiancée and erred by refusing to give a jury instruction on voluntary manslaughter. Because the trial court abused its discretion in

---

[1] Basham was killed on February 22, 2021. On March 23, 2021, a Haralson County grand jury indicted Biggs for malice murder, felony murder, and aggravated assault. After a jury trial that ended on November 2, 2023, Biggs was found guilty on all counts. On January 8, 2024, Biggs was sentenced to serve life in prison without the possibility of parole for malice murder. The felony murder count was vacated by operation of law, and the aggravated assault count was merged into the malice murder conviction for sentencing purposes. Biggs filed a timely motion for new trial, which he amended on January 31, 2025. The trial court denied Biggs's amended motion for new trial on May 23, 2025. Biggs filed a timely notice of appeal,  and the case was docketed in this Court to the August 2025 term and submitted for a decision on the briefs.

excluding the victim's prior violent act under OCGA § 24-4-403 ("Rule 403"), we vacate the trial court's order denying Biggs's motion for new trial and remand the case with direction.[2]

1. *Evidence at Trial*

As summarized below, the evidence presented at trial showed that Biggs and his fiancée Miranda Bell drove from South Carolina to Basham's house in Haralson County to pick up April Oubre – who was Bell's mother and Basham's girlfriend – and her belongings. While Oubre, Bell, and Biggs were arguing with Basham, Biggs shot and killed Basham and left with Oubre and Bell. Biggs testified at trial in support of his defense of justification.

Basham lived with Oubre at his uncle's house. When Basham's uncle came home from work around 4:30 p.m. on February 22, 2021, he found Basham lying dead in the carport. The cause of death was two gunshot wounds to the torso from a distant or indeterminate

---

[2] We do not address Biggs's enumeration of error related to the trial court's omission of a jury charge on voluntary manslaughter, but he may raise this enumeration again in a renewed appeal if the trial court again denies Biggs's motion for new trial. See *Kitchens v. State*, 322 Ga. 169, 169 n.2 (2025); *Welbon v. State*, 301 Ga. 106, 111 n.5 (2017).

range. No weapon of any sort was found with or near Basham, but two shell casings were found in the driveway.

Surveillance video footage from the house showed the following over the course of about five minutes. Around 4:00 p.m. that day, a woman later identified as Oubre was taking things out to the edge of the road, and a red vehicle backed into the driveway but parked close to the road. Two persons – a woman later identified as Bell and a man who was driving the vehicle and was later identified as Biggs – exited the vehicle and began loading it. They yelled back toward the house, and Bell got a baseball bat from the vehicle. Biggs walked around Oubre and toward the carport. A man in the carport later identified as Basham was gesticulating and, as he then began to move from the carport toward Biggs, Biggs pulled out a gun and fired twice. During the brief time that Basham appeared in the video, his empty left hand could be seen. Although Basham's right hand or its shadow could be seen after Biggs began walking toward him, it could not be seen immediately before the shooting. After the shooting, Biggs, Oubre, and Bell entered the vehicle and left.

3

Later that day, police located Biggs, Oubre, and Bell in a red Ford Escape in Anderson, South Carolina, and Biggs was arrested at that time. The vehicle was registered to Biggs and contained a bat on the passenger side and a Smith & Wesson .40-caliber semi-automatic pistol that was between the driver's seat and the console and that matched the two shell casings at the scene and a projectile recovered during the autopsy of Basham.

At trial, Biggs testified as follows. He and Bell arrived at the scene around 4:00 p.m. and parked next to Oubre's belongings on the side of the road. Oubre was getting her things from the carport, and Basham was on the front porch yelling and cursing at her. After exiting his car, Biggs walked to the side of the car to urinate and afterward began petting a dog that came up. Basham went inside, came to the carport door, and told Oubre that he was going to kill her for leaving him and also kill her "b***h daughter," but Biggs was not paying attention, was just trying to leave, and did not think anyone was in imminent danger of violence at that point. Basham then accused Biggs of "taking [Oubre] away from him," but Biggs

4

said that he was not there to argue and that they were about to leave. As Oubre was saying she "need[ed] to go to the hospital," Basham said, "I'm going to kill you, n****r," and he started coming toward Biggs. Biggs "instantly feared for [his] life and [Oubre's] life," so he got in front of Oubre so that she would not be harmed, and he took 11 steps toward Basham. Basham again said "that he was going to kill" Biggs and also said he knew Biggs had a gun on him but did not care. Basham did not have a weapon in his hands, but when he got to the edge of the carport, he said, "I got something for your a**," and reached into his pocket for what Biggs believed was a gun. Basham put his hand in his pocket, which Biggs saw as a "threat of force," and never took his hand out, and there was a bulge in his pocket that looked like a gun. Biggs feared Basham was going to kill him at that moment, pulled his gun, and shot in Basham's direction. Biggs did not see any blood or see Basham fall, so he thought he had not hit Basham. He, Oubre, and Bell left to take Oubre to the hospital, but Oubre said she wanted to go to a hospital closer to their house in South Carolina, so he took her to a hospital in Anderson.

5

2. *Arguments of the Parties and Rulings of the Trial Court*

Biggs contends that the trial court abused its discretion by excluding, under Rule 403, evidence that Basham had assaulted Oubre earlier on the day of the shooting, including testimony that this assault was the reason Biggs went to Basham's house to pick up Oubre. Biggs also contends that this evidence was relevant and admissible either as intrinsic evidence or under OCGA § 24-4-404(b) ("Rule 404(b)"). But the trial court did not rule on whether the evidence was intrinsic in nature or whether it came within the requirements of Rule 404(b). Instead, it ruled only that evidence of Basham's assault on Oubre failed the balancing required by Rule 403. After thoroughly reviewing the record, we conclude that the trial court abused its discretion under Rule 403.

Prior to trial, the court denied a motion in limine filed by the State to exclude such evidence, concluding that Biggs, upon making out a prima facie case for defense of self or others, would be authorized to present evidence of specific instances of Basham's violent conduct – known to Biggs at the time he shot Basham – to

6

prove Biggs's state of mind "that could have factored into the decision making process that resulted in his fatally shooting ... Basham." Also before trial, the court denied a motion filed by Biggs for a continuance to secure the attendance of absent out-of-state witnesses Oubre and Bell.

During Biggs's testimony at trial, the trial court ruled that Biggs had presented a prima facie case of self-defense. But the trial court subsequently stated that it did not anticipate Biggs's testimony that he had "ignored" Basham's arguments and threats until Basham "directed" them at Biggs. The trial court further stated that in fairness to both sides, the only testimony that could be fairly elicited about Biggs's state of mind would relate to the victim's prior criminal convictions because otherwise the door would be opened for defendants to "make anything up." The trial court ruled that under Rule 403, the probative value of any evidence of specific violent acts by Basham to show Biggs's state of mind would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

Thereafter, the trial court specifically allowed the State to introduce, for impeachment purposes on cross-examination of Biggs, a stipulated recording of a 911 call that Biggs made upon returning to South Carolina. Although the State argued that playing the whole recording would circumvent the court's ruling that excluded evidence of Basham's assault on Oubre, the trial court ruled that the entire recording would be played, including the portion where Biggs explained that he went to pick up Oubre because she had been beaten by Basham and that Biggs rushed her to the hospital. The trial court stated, however, that "there will be no follow-up questions from the defense or the State or any testimony from … Biggs as to any of the allegations he made about why he came to Haralson County" and that the jury would "hear it and I expect that will be the last that's said of it." Defense counsel then expressed his intent to comply with the trial court's ruling by neither presenting any more testimony nor referring to Basham's prior assault against Oubre during closing argument.

The recording of the 911 call was in fact played for the jury. In

8

the call, Biggs told the operator, among other things, that he and his fiancée went to pick up her mom, who had called him "frantically" that morning about her "getting … beat on by her boyfriend"; that "she rushed to get me over there to come save her and pick her up"; that Basham threatened everyone and "kept running toward" him even after Biggs fired a warning shot; and that he "just rushed her mom to the hospital because she's pretty beaten, kind of badly."

The trial court revisited the issue in its order denying Biggs's motion for new trial. Although the court extensively quoted applicable law and reviewed the parties' argument, it assumed for purposes of its analysis that the evidence at issue was intrinsic and that this Court would eventually hold that a victim's prior bad acts are admissible under OCGA § 24-4-404 ("Rule 404")[3] to establish the defendant's state of mind and the reasonableness of his use of force.[4]

---

[3] The trial court acknowledged this Court's holding that, because a victim's violent character is not an essential element of self-defense, evidence of specific instances of the victim's conduct may not be admitted under OCGA § 24-4-405(b) ("Rule 405(b)"). *Wood v. State*, 320 Ga. 466, 470 (2024).

[4] The trial court explained that "[t]his Court has reserved the question

9

The trial court assumed specifically that the evidence that Basham committed an act of family violence by physically assaulting Oubre earlier on the day of his death was not barred by Georgia law and was relevant. The trial court found, however, that this evidence did not pass the requirements of Rule 403 because its probative value was weak. Noting that neither Bell nor Oubre testified or even appeared at trial, the trial court found that, if Biggs established his knowledge at the time of the fatal shooting that Basham had physically abused Oubre before Biggs started his six-hour drive to Basham's house, Biggs's behavior at the murder scene as well as Oubre's actions – as seen by the jury in the video evidence – and Biggs's trial testimony greatly diluted the probative value of the proffered "specific acts" evidence.[5] The trial court then found that

whether prior acts of violence by a victim could be admitted if they are relevant to a purpose other than to prove the victim's 'character ... in order to show action in conformity therewith.'" *Wood*, 320 Ga. at 470 n.5 (quoting Rule 404(b)).

[5] The trial court specified that it considered the following admissible evidence: Oubre's trips to move her belongings to the driveway were unhurried, without limping, and with no apparent difficulty, and she talked on a cell phone and acted as if she was not arguing with or threatened by anyone; while

the weak probative value of the "specific acts" evidence was substantially outweighed by the danger of unfair prejudice to the victim and to the State's case, confusion of the issues, and misleading the jury, and by considerations of undue delay and waste of time. The trial court concluded in its order denying Biggs's motion for new trial "that it did not err by excluding the domestic-violence evidence that … Basham assaulted … Oubre the day that Biggs fatally shot him."

3. *Rule 403*

---

Basham was in the carport, Biggs urinated next to his car with his back toward the victim; Biggs calmly helped load Oubre's belongings with his back to the victim; Biggs took time to pet the dog with his back to the victim, and at least one of the women also petted the dog; Biggs took 11 steps towards Basham before quickly pulling his loaded pistol from his rear waistband and immediately shot Basham; no weapon of any type was found on or near Basham; Basham's empty hands were seen on the security video in the final moments before Biggs shot him; after the shooting, Biggs immediately walked back to his car and drove off, leaving Basham alone to die in the carport; Biggs did not call 911 until he was in South Carolina a couple of hours after he shot Basham; Biggs's recorded 911 call is completely contradicted by the unimpeached video evidence of the shooting; Biggs testified that he was ignoring Basham at the shooting scene because Biggs is not a confrontational person and that he had never had an argument with Basham because Basham never argued; and Biggs's purported fear of Basham's potential for violence toward the two women and him apparently was not significant enough to motivate him to call 911 before his arrival for police protection while he picked up Oubre.

11

We turn now to an examination of Rule 403 because Biggs contends that the trial court abused its discretion by excluding evidence of Basham's assault on Oubre under that rule. Regardless of whether this evidence should be "addressed under Rule 404(b) or as intrinsic," the proponent of the evidence must prove that it "satisfies Rule 403." *Harris v. State,* 314 Ga. 238, 266–67 (2022). Thus, in order to decide whether the evidence satisfies Rule 403, we need not decide whether it should be analyzed as intrinsic evidence or as Rule 404(b) evidence. See id. at 267. Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Coleman v. State,* 321 Ga. 476, 481 (2025) (punctuation omitted). "[I]n close cases, balancing under Rule 403 should be in favor of

12

admissibility of the evidence." *Pike v. State*, 302 Ga. 795, 801 (2018).

"[T]he Rule 403 balancing test calls for the exercise of the trial court's discretion." *State v. Atkins*, 304 Ga. 413, 422 (2018). Although this discretion generally is "broad," "it is not unlimited. Such discretion does not sanction exclusion of competent evidence without a sound, practical reason." Id. (quotation marks omitted; citing precedent of the United States Court of Appeals for the Fifth and Eleventh Circuits).[6] In this regard, we have said that, "[b]ecause the primary function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect, the trial court's decision to exclude evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Rooks v. State*, 317 Ga. 743, 757 (2023) (quotation marks omitted). For this reason, the Eleventh Circuit has described the trial court's discretion to *exclude* evidence under Rule 403 –

---

[6] Because Rule 403 "is modeled on its counterpart in the Federal Rules of Evidence, we may look to federal appellate precedents interpreting the pertinent federal rule for guidance in applying the state provision." *Harris*, 314 Ga. at 264.

13

unlike its ordinarily broad discretion to *admit* relevant evidence – as "narrowly circumscribed." *United States v. Smith*, 459 F3d 1276, 1295 (11th Cir. 2006).

4. *Probative Value*

"The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point." *State v. Flowers*, 320 Ga. 882, 889 (2025) (quotation marks omitted). The evidence of Basham's prior assault on Oubre and Biggs's knowledge of it explained why Biggs went to Basham's house to pick up Oubre and her things, why there was tension between Basham and the others, and why they would have been arguing at the time. The evidence was relevant to Biggs's justification defense, as he presented a viable prima facie case of self-defense and defense of others. The surveillance video of the shooting showed Basham moving directly toward Biggs and did not show what Basham was doing with his right hand just before Biggs drew his pistol. Weaknesses in Biggs's viable justification defense increased his need to support it with evidence of his mental state and to counter

the State's claim that Biggs acted out of malice instead of a reasonable fear. Although the trial court relied on Biggs's admitted initial lack of fear in excluding the evidence, Biggs could have used Basham's attack on Oubre just hours earlier to explain why his fear for himself and the others developed quickly when, according to Biggs's testimony, Basham expanded his threats and reached inside his pocket.

Given the relevance of Basham's earlier assault against Oubre to Biggs's justification defense, and Biggs's need to counter the State's evidence tending to disprove that defense, the probative value of the evidence of Basham's assault against Oubre was significant. See *Ward v. State*, 318 Ga. 884, 902 (2024) (assuming without deciding that Rule 404(b) applies to evidence regarding the other acts of a victim, a victim's prior violence may be admissible to "establish the defendant's state of mind and the reasonableness of the defendant's use of force" (quotation marks omitted)). That probative value is analogous to that which we have previously identified when analyzing admission of the State's evidence of a

15

defendant's prior acts. See *Mills v. State*, 320 Ga. 457, 465 (2024) (holding that the prosecutorial need for evidence that two weeks earlier the defendant and others had assaulted another person who disrespected a fellow gang member was significant, given that the State had to disprove the defendant's justification defense and his motive was not otherwise clear); *Miller v. State*, 320 Ga. 255, 264–67 (2024) (holding that two prior incidents of domestic violence between the victim and the defendant had significant probative value because they explained in the context of their relationship why he would start shooting when she only said she was leaving him and he heard a table sliding); *Jackson v. State*, 315 Ga. 543, 558 (2023) (holding that evidence of a prior botched drug deal was highly probative and necessary to explain the context of the crime); *Heade v. State*, 312 Ga. 19, 27 (2021) (holding that three prior acts of defendant were highly probative evidence that explained the context of the charged crimes); *Frazier v. State*, 309 Ga. 219, 227 (2020) (holding that application of the Rule 403 balancing test showed that the State had a high prosecutorial need for other acts evidence to

counter the defense).

5. *Danger of Unfair Prejudice*

"The prejudicial effect of evidence is 'unfair' if the evidence has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged, or an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Wilson v. State*, 315 Ga. 728, 738 (2023) (punctuation omitted). Biggs argues that when a defendant offers a victim's prior bad act to support his defense, the standard for admission is "relaxed," and "the normal risk of prejudice is absent." *United States v. Cohen*, 888 F2d 770, 776, 777 (11th Cir. 1989). Regardless of whether and to what extent Biggs is correct, the risk of unfair prejudice in this case was not high. The disputed evidence was relevant to support Biggs's state of mind and his justification defense, and the jury was not likely to acquit Biggs on the sole basis that Basham had committed domestic violence. See *Thompson v. State*, 308 Ga. 854, 860 (2020) ("The other acts evidence had a prejudicial effect, but no more than was inherent in the prior

acts; the evidence was not dragged in by its heels for the sake of its prejudicial effect." (quotation marks omitted)); *West v. State*, 305 Ga. 467, 474 (2019) (recognizing that, if the evidence implicates no irrelevant or collateral matters, any prejudice arises only from its probative value).

The State has remained silent about the trial court's specific ruling under Rule 403, providing no argument on appeal about either the probative value of the excluded evidence or the risk of unfair prejudice. And the trial court did not separately address the quantum or nature of the potential prejudicial effect, instead expressly addressing only the perceived weakness of the probative value of the excluded evidence and concluding that the probative value therefore was substantially outweighed by the danger of unfair prejudice. We acknowledge that evidence of Basham's violence earlier in the day could have tempted the jury to think that he deserved retribution. But, in the absence of irrelevant or collateral matters, it was unlikely that the jury would acquit Biggs based solely on Basham's prior violent act. See *State v. Burns*, 306

18

Ga. 117, 126 (2019) (holding that Rule 403 did not bar admission of alleged rape victim's prior false allegation of sexual misconduct where the probative force of that evidence was not scant and it was unclear how the prior allegation would inflame the jury's passions and inspire an emotional rather than a reasoned decision). Cf. *Gialenios v. State*, 310 Ga. 869, 879–80 (2021) (holding that, where the trial court permitted testimony about the victim's verbal abuse of his wife and about how she had conceived the victim's child, the court did not abuse its discretion in prohibiting cross-examination into whether she had used the terms "rape" or "rape baby" because such evidence was not probative and was overly prejudicial to the victim by suggesting that he was deserving of death at the hands of the defendant or someone else). Accordingly, any risk of unfair prejudice from Basham's prior violent act toward Oubre did not substantially outweigh the probative value of that evidence, which, as discussed above, was explanatory and relevant to Biggs's prima facie case of justification.

6. *Other "[D]anger[s]" and "[C]onsiderations" under Rule 403*

19

In its ruling at trial, the trial court also relied on the dangers of "confusion of the issues" and "misleading the jury" but did not explain, nor has the State explained, and we do not see, how evidence of Basham's prior assault against Oubre would confuse the issues or mislead the jury in a way that would substantially outweigh the probative value of that evidence.

There is no basis for confusion of the issues, as this prosecution involves one defendant and a single incident, and the victim's prior violent act occurred earlier in the day and did not involve the defendant. See *Burns*, 306 Ga. at 126 ("[W]ith respect to 'confusion of the issue[s],' this prosecution involves one defendant and a single incident[.] The false allegation at hand plainly describes an event involving someone else at a separate time; there is no basis for confusion."). There was no evidence that a mini-trial or a "trial within a trial" would have been required if Basham's prior assault of Oubre had been admitted. In that event, Biggs would have been permitted to testify about his knowledge of the prior incident and to include that circumstance in his closing argument, and Oubre and

Bell were not available to testify. Moreover, neither the trial court nor the State explained why any confusion of the issues could not be remedied by jury instructions regarding how and for what purposes the jury should consider the evidence. See *Wilson v. State*, 312 Ga. 174, 193–94 (2021) (holding that the probative value of the appellant's alleged prior offenses was not substantially outweighed by the danger of confusion of the issues where evidence of the prior offenses did not present a "trial within a trial" problem and where the trial court charged the jury on how it should consider evidence of the prior offenses and the appellant did not request further instructions).

As for potentially misleading the jury, the State has not explained any difference between the basis for the court's ruling with respect to confusion of the issues and the basis for its ruling with respect to misleading the jury. We see no likelihood that Basham's prior violent act would have misled the jury regarding its determination of Biggs's culpability or that limiting instructions and the opportunity for cross-examination would not have prevented the

21

jury from being misled. See *Harris*, 314 Ga. at 294 (rejecting the argument that any probative value of certain demonstrative evidence was substantially outweighed by the risk of misleading the jury where the differences between human sight and the demonstrative evidence were elicited during cross-examination and the jury could compare the demonstrative evidence to other evidence in the case).

In its order denying Biggs's motion for new trial, the trial court additionally recited the considerations under Rule 403 of undue delay or waste of time. As with the dangers under Rule 403 that it listed, the trial court did not explain, nor do we see, how admission of Basham's prior violent act against Oubre would result in undue delay or waste of time that would substantially outweigh its probative value. As already discussed, had the trial court admitted this evidence, the only delay or passage of time would have been the time required for Biggs to testify and be cross-examined about his knowledge of that incident. Thus, we conclude that the trial court abused its discretion to the extent it generally relied on the dangers

and considerations set out in Rule 403 in addition to unfair prejudice.

7. *Conclusion*

Given the significant probative value of the evidence of Basham's prior assault against Oubre and the minimal risk of unfair prejudice and of other dangers and considerations, we hold that the trial court abused its discretion in excluding Basham's prior violent act under Rule 403, and we therefore vacate the trial court's order denying Biggs's motion for new trial. However, we cannot say at this point that evidence of Basham's prior act was not properly excluded on an alternative basis or that its exclusion was not harmless. We therefore remand the case with the following direction. See, e.g., *Welbon v. State*, 301 Ga. 106, 107, 110–11, 111 n.5 (2017) (vacating an order denying the appellant's motion for new trial and remanding for consideration of his claim that his pre-trial statements were involuntary because the trial court erroneously placed the burden on the appellant and we could not say at that stage that there was no evidence authorizing the grant of a motion to suppress or that the

error was harmless). The trial court should consider the remaining available grounds for admitting or excluding Basham's prior assault against Oubre. If the trial court determines that Basham's prior violent act was admissible, then it should consider whether exclusion of the evidence at trial, together with the court's prohibition on any further mention of the evidence, was harmless.

*Judgment vacated, and case remanded with direction. All the Justices concur.*