**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0455
Ja'Mychael Quintrez Peavy
v.
The State

On Appeal from the Superior Court of Forsyth County
No. 23CR-0356-2

Decided: May 5, 2026

BETHEL, Justice.

Ja'Mychael Quintrez Peavy was convicted of felony murder and other crimes in connection with the shooting death of his coworker Hamilton Darwin following a workplace dispute.[1] On appeal, Peavy argues that: (1) the verdict form and related jury instructions violated *Edge v. State*, 261 Ga. 865 (1992), and its progeny and were misleading; (2) the trial court erred in

---

[1] The crimes occurred on May 17, 2023. On July 10, 2023, a Forsyth County grand jury indicted Peavy for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and two counts of possession of a firearm during the commission of a felony (Counts 4 and 5). At a jury trial in March 2025, Peavy was found not guilty on Counts 1 and 5 but guilty on the remaining counts. The trial court sentenced Peavy to serve life in prison on Count 2 and five years consecutive on Count 4. Count 3 merged into Count 2.

Peavy filed a timely motion for new trial on March 18, 2025, which he amended twice. Peavy waived a hearing on the motion, and the trial court entered an order denying the motion, as amended on September 9, 2025. Peavy then filed a timely notice of appeal, and his case was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

excluding proffered defense testimony; and (3) the "guilty" verdicts for felony murder and aggravated assault were repugnant when considered in light of the "not guilty" verdict for possession of a firearm during the commission of an aggravated assault. For the reasons that follow, Peavy's claims fail, so we affirm.

1. The evidence admitted at trial showed the following. On the morning of May 17, 2023, shortly after Peavy arrived at work, he confronted Darwin, his coworker, about his concern that Darwin was speaking poorly of him to their manager. During the course of that confrontation, which began as a verbal argument, Darwin punched Peavy. Peavy fell, got up, and began walking to his car. Darwin followed, yelling to Peavy, "F**k, n***er, you ain't going to get that gun." One of Peavy's coworkers grabbed Darwin and tried to keep him from pursuing Peavy. Darwin broke away and followed Peavy toward Peavy's car. Once Peavy reached his car, Darwin began moving away from Peavy. Peavy then grabbed a gun from his car and, in view of several coworkers, fired it at Darwin multiple times. Darwin, who was also armed, then returned fire, striking Peavy in the abdomen. When the shooting stopped, Peavy entered his workplace and dropped his gun on the floor, which was secured by the manager until police arrived. Peavy told his manager that he had shot Darwin. Darwin suffered gunshot wounds to his leg, shoulder, and chest, and ultimately died as a result of his wounds.

At trial, a fellow inmate who was incarcerated with Peavy testified that Peavy told him he was tired of Darwin belittling him at the job and wanted to put an end to it. According to the inmate, Peavy told him that he initially fired two shots at Darwin, who then ran, and that he pursued the fleeing Darwin and shot him three more times. Peavy argued justification at trial and asserted,

2

alternatively, that he acted in the heat of passion, such that the jury should find him guilty of the lesser offense of voluntary manslaughter.

2. Peavy first argues that the verdict form, as well as the related jury instructions, constituted an improper sequential jury instruction in violation of this Court's decision in *Edge v. State*, 261 Ga. 865 (1992). He also asserts that the verdict form was misleading. Because Peavy did not object to the verdict form and related instructions at trial, we review this claim only for plain error. See *Cheddersingh v. State*, 290 Ga. 680, 682–83 (2012); OCGA § 17-8-58.

To show plain error, the appellant must demonstrate that the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Satisfying all four prongs of this standard is difficult, as it should be.

*State v. Owens*, 312 Ga. 212, 219 (2021) (quotation marks omitted). Peavy has failed to demonstrate any error, much less clear and obvious error, in the verdict form or related instructions.

In *Edge*, this Court held that a jury instruction is improperly sequential if it requires "the jury to consider voluntary manslaughter *only* if it has considered and found the defendant not guilty of malice murder and felony murder." 261 Ga. at 867. Peavy understands that holding to require that the jury conducts its deliberations in a particular order, beginning with voluntary manslaughter before proceeding to the charged counts. And he asserts that, because voluntary manslaughter was listed as an

3

option at the bottom of the verdict form, after the five charged counts,[2] and because the trial court instructed the jurors that they could consider "all of these offenses in any order that you wish," the rule against sequential instructions, as he understands it, was violated here. Peavy is incorrect.

As we have explained, "when the evidence presented in a criminal trial warrants a jury instruction on a lesser-included offense, the trial court errs if it instructs the jury that it may consider the lesser offense *only* if it first unanimously finds the defendant not guilty of the indicted greater offense." *Stewart v. State*, 311 Ga. 471, 473–74 (2021) (emphasis added). Neither listing voluntary manslaughter after the charged offenses nor instructing the jury that it could consider the offenses in any order it wished is the equivalent of an improper sequential instruction that the jury could consider voluntary manslaughter only after unanimously finding Peavy not guilty of malice murder and felony murder. See *Morris v. State*, 303 Ga. 192, 198 (2018) ("There is no 'exact formula' that trial courts must follow in this context so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter." (quotation marks omitted)); *Van v. State*, 294 Ga. 464, 467 (2014) ("Merely listing the offenses on the verdict form in the order of malice murder, felony murder, and voluntary manslaughter [does] not constitute reversible error."). There likewise is no requirement that the jury be instructed to consider the lesser offense before the charged

---

[2] The preprinted verdict form listed each of the five counts of the indictment with a blank to the left of each count where the jury could write "guilty" or "not guilty." Below the charged counts, the verdict form separately listed an option for voluntary manslaughter, also with a blank to the left where the jury could enter its verdict. The voluntary manslaughter option was separated from the indicted counts by several blank lines and the word "OR."

4

offenses. In fact, we have approved an instruction to the contrary. See *Morris*, 303 Ga. at 198 ("A trial court may instruct a jury to consider a greater offense before it considers a lesser offense." (quotation marks omitted)). The only prohibition in this context is that the trial court may not "instruct the jury that it must reach a unanimous verdict on the greater offense before considering the lesser offense." Id. (quotation marks omitted). And because neither the verdict form nor the trial court's related instruction required the jury here to reach a unanimous verdict on the greater offenses before considering the lesser offense, the charge was not sequential and, thus, was not erroneous, much less plainly so.

Peavy further complains that the verdict form was misleading because, by listing voluntary manslaughter after all the charged offenses, it failed to ensure that the jury considered voluntary manslaughter as a lesser offense of both malice murder and felony murder. But a preprinted verdict form is "treated as part of the jury instructions." *Cheddersingh*, 290 Ga. at 683. And "it is axiomatic that we do not assess jury charges in isolation; rather, we consider them as a whole to determine whether there is a reasonable likelihood the jury improperly applied a challenged instruction." *Locklear v. State*, 317 Ga. 115, 122 (2023) (quotation marks omitted). See also *Owens*, 312 Ga. at 217–20 (considering the verdict form along with the jury instructions and noting that "it is critical to consider the jury instructions as a whole").

Considering the jury instructions here as a whole, it is clear that the instructions correctly informed the jury that it could find Peavy guilty of voluntary manslaughter as an alternative to either malice murder or felony murder. Specifically, the trial court instructed the jury that the verdict form was not sequential

and that voluntary manslaughter is "the lesser offense of murder" and that "[i]n considering the malice and felony murder charges, you must decide whether the defendant was sufficiently provoked and acted out of passion." The trial court further instructed that, if the jury found "the defendant was sufficiently provoked and acted out of passion," it "may not return a verdict of guilty of malice or felony murder, but … would be authorized to return a verdict of guilty of voluntary manslaughter." Because the instructions as a whole informed the jury that voluntary manslaughter was a lesser-included alternative to both the malice murder and felony murder counts, Peavy cannot establish any error, let alone plain error, in this respect. See *Johnson v. State*, 300 Ga. 665, 669 (2017) (no error when jury charge, as a whole, correctly informed jury it could find defendant guilty of malice murder or voluntary manslaughter).

3. Peavy next argues that the trial court erred by excluding the testimony of an expert witness that would go to Peavy's justification defense. Specifically, he asserts that the trial court's analysis of the testimony's admissibility was deficient in several respects. He also argues, for the first time on appeal, that by excluding the expert testimony the trial court violated his constitutional right to present a complete defense. For the reasons discussed below, both arguments fail.

The State filed a pretrial motion in limine to exclude the testimony of an expert witness who would testify in the areas of defensive tactics, active shooter situations, and firearms; the witness had previously testified at an evidentiary hearing on Peavy's motion for pretrial immunity, which was denied. The State moved to exclude the testimony under OCGA §§ 24-7-702, 24-4-402, and 24-4-403, arguing that the testimony was not relevant to any issue in the case and would not assist the trier of

6

fact. The trial court subsequently entered an order granting the State's motion. After noting the State's previous agreement that the expert was qualified to testify in the areas of defensive tactics, active shooters, firearms, and training for defensive tactics, the court turned its attention to the relevance of the expert's testimony to supporting Peavy's defense of self-defense. In its order, the court highlighted some examples of the proffered expert testimony. The highlighted testimony generally related to the use of defensive training and tactics, including testimony as to whether height and weight affects defensive tactics, whether flight demonstrates escalation or de-escalation, whether having a weapon escalates a confrontation, whether a punch to the face is an active threat, and how defensive tactics and training assist in dealing with such a situation. The court ultimately held that the "questions concerning defensive training and tactics" were not relevant because there was no evidence that Peavy had received any such training. The court further determined that the expert's testimony would not be helpful to the trier of fact, with the exception of testimony "concerning the way in which a Glock works, how shell casings are ejected, and other information concerning shell casings and their locations."[3]

(a) Peavy argues that the trial court abused its discretion by excluding the expert's testimony under OCGA § 24-7-702 ("Rule 702") because, he says, the court's admissibility analysis was flawed in several respects. We are not persuaded.

Subsection (b) of Rule 702 lays out the standards governing

---

[3] The court also excluded the expert's testimony concerning the psychological effects of the confrontation on Peavy under OCGA § 24-7-704(b) on the basis that Peavy had not raised "any of the mental defenses recognized by Georgia law." Peavy does not appear to challenge that portion of the trial court's ruling on appeal, so we do not address it.

7

the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (1) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) [t]he testimony is based upon sufficient facts or data; (3) [t]he testimony is the product of reliable principles and methods; and (4) [t]he expert has reliably applied the principles and methods to the facts of the case.

OCGA § 24-7-702(b). This standard requires the trial court to "act as a 'gatekeeper' to ensure the relevance and reliability of expert testimony," applying the principles identified in *Daubert v. Merrell Dow Pharmaceuticals*, 509 US 579 (1993), and its progeny.[4] *Dubois v. Brantley*, 297 Ga. 575, 585 (2015). As the Eleventh Circuit has explained,[5] subsection (b)'s standard

---

[4] Effective July 1, 2022, the General Assembly extended to criminal cases the federal standard of admissibility of expert testimony articulated in *Daubert* and its progeny. See Ga. L. 2022, p. 201, § 1 (amending OCGA § 24-7-702). The *Daubert* standard has been applicable in civil actions in this state since 2005, when the General Assembly enacted the predecessor statute to OCGA § 24-7-702. See Ga. L. 2005, p. 8, § 7.

[5] Subsection (b) of OCGA § 24-7-702 is identical to Federal Rule of Evidence 702, so in applying this rule, we may look for guidance to federal case law, especially that of the United States Supreme Court and the Eleventh Circuit of Appeals. See *Miller v. Golden Peanut Co., LLC*, 317 Ga. 22, 26 (2023) ("[B]ecause our Rule 701 and Rule 702 are modeled after Rules 701 and 702 of the Federal Rules of Evidence, we look to the decisions of federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit, that have construed and applied these Rules.").

embodies three "basic requirements" for the admissibility of expert testimony under Rule 702: "qualification, reliability, and helpfulness." *United States v. Frazier*, 387 F3d 1244, 1260 (11th Cir. 2004). And the burden is on the proponent of the expert testimony to establish that it meets these three requirements. See *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286, 293 (2016) (citing *Frazier*, 387 F3d at 1260). Finally, we review a trial court's decision to admit or exclude evidence under Rule 702 for abuse of discretion. *Miller v. Golden Peanut Co., LLC*, 317 Ga. 22, 30 (2023) ("[A] trial court has broad discretion under Rule 702 to admit or exclude expert testimony."). With these principles in mind, we turn our attention to Peavy's complaints about the Rule 702 analysis the trial court undertook here.

(i) Peavy asserts that the trial court erred by excluding the expert testimony as irrelevant because, he says, Rule 702 does not provide for the exclusion of evidence based on relevance and, in any event, the State failed to prove that his expert's testimony "would be completely irrelevant." But as we have already noted, the Rule 702 standard requires a trial court to assess the relevance of proffered expert testimony as part of its admissibility analysis. Indeed, the "touchstone" of the "helpfulness" inquiry — that is, whether the expert testimony will help the trier of fact understand the evidence or determine a fact in issue — "is the concept of relevance." *Prosper v. Martin*, 989 F3d 1242, 1249 (11th Cir. 2021). See also *Daubert*, 509 US at 591 ("The Rule's requirement that the testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue' goes primarily to relevance by demanding a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). As *Daubert* itself recognizes, if expert testimony does not relate to any issue in the case, it is "not relevant and, ergo, non-helpful." Id. (quotation marks omitted). In the context

9

of Rule 702, "[r]elevance means there must be a fit between the inquiry in the case and the testimony" and "[t]he opinion must concern matters that are beyond the understanding of the average lay person." *Johnson v. BLC Lexington SNF, LLC*, 478 FSupp3d 578, 583 (ED Ky. 2020). See also *Miller*, 317 Ga. at 31. Establishing relevance under Rule 702's helpfulness prong is therefore a higher burden than meeting the "liberal, baseline standard" set forth in Rule 402. *U.S. v. Bays*, 2014 WL 3764876, at \*5-\*6 (ND Tex. 2014). See also *Aquila v. Nationwide Mut. Ins. Co.*, 2009 WL 82499, at \*2 (ED Pa. 2009). Accordingly, assessing relevancy is part and parcel of the trial court's role in determining, in the first instance, the admissibility of expert evidence under Rule 702, and the court is authorized to exclude evidence on that basis. Moreover, because Peavy was the proponent of the expert testimony at issue, he bore the burden of proving that the testimony was relevant. See *Scapa Dryer Fabrics*, 299 Ga. at 293. The burden was not, as he argues, on the State to prove that the expert testimony was "completely irrelevant."

Here, we cannot say that the trial court abused its discretion by excluding the proffered expert testimony on the bases identified in its order. As to general testimony about defensive tactics and training, Peavy does not dispute the finding that he never received such training, and in the absence of evidence that he did, testimony about defensive tactics and training has no bearing on his self-defense claim. See *McDowell v. Brown*, 392 F3d 1283, 1299 (11th Cir. 2004) ("Under *Daubert*, scientific testimony does not assist the trier of fact unless the testimony has a justified scientific relationship to the pertinent facts."). And the remaining testimony highlighted in the trial court's order concerned issues that a layman could resolve through the application of simple common sense. Cf. *Kilpatrick v.*

10

*State*, 308 Ga. 194, 196–97 (2020) (trial court acted within its discretion under former OCGA § 24-7-707 in excluding defendant's proffered expert testimony regarding "use of force, fight-flight-freeze responses, and human physiology during high-stress and life-threatening situations" because it was not beyond the ken of the jury to determine if defendant was justified in shooting victim given the evidence at trial). While Peavy generally insists that the trial court underestimated the value of his expert's testimony to aid the jury's understanding of "real-time threat perception, firearm mechanics, and human reaction time," he fails to demonstrate with citation to the record that these were material aspects of the case or that his expert in fact offered testimony relevant to these issues. See *Suggs v. State*, 310 Ga. 762, 767 (2021) ("[T]he burden is on the party alleging error to show it by the record." (quotation marks omitted)); *Soto v. State*, 303 Ga. 517, 523 (2018) ("[I]t is not this Court's responsibility to cull the record in search of support for the appellant's claims[.]"). See also *Scapa Dryer Fabrics*, 299 Ga. at 293 (proponent of expert testimony bears the burden that it meets the requirements for admissibility under Rule 702). Thus, on this record, we cannot say that the trial court abused its discretion by excluding the testimony as irrelevant under Rule 702, and this claim fails.

(ii) Peavy also complains that the trial court failed to engage in a "full reliability analysis." Peavy is correct that the trial court did not explicitly address the reliability prong of the Rule 702 analysis. But the State's motion in limine did not challenge the reliability of the expert testimony. Instead, the State moved to exclude the testimony solely on relevance grounds, and the trial court's order granted the motion solely on that basis. Peavy cites no authority requiring a trial court to consider reliability and engage in an on-the-record analysis where the

issue is not raised by the parties and the court determines that exclusion is warranted on a different basis. See *U.S. v. Hall*, 165 F3d 1095, 1103 n.4 (7th Cir. 1999) ("Where expert scientific evidence is properly excludable under the second prong of *Daubert*, the [trial] court is not required to undertake an inquiry into the reliability of the proffered testimony. Since the [trial] court can exclude reliable expert testimony under Rule 702, requiring the [trial] court to first decide whether the proffered testimony satisfies *Daubert*'s reliability prong would be a needless exercise."). See also *Walker v. Spina*, 359 FSupp3d 1054, 1071 (D. N.M. 2019) (if the expert's proffered testimony fails the relevance prong of a *Daubert* analysis, the court does not need to consider its reliability). As such, Peavy has failed to show that the trial court abused its discretion in this respect.

(b) Peavy also contends that, by excluding his expert's testimony, the trial court violated his right to present a complete defense under the Sixth Amendment to the United States Constitution. Peavy did not object on this basis at trial, so we review this claim only for plain error. See *Wood v. State*, 320 Ga. 466, 471 (2024); OCGA § 24-1-103(d). Here, Peavy has failed to establish that the trial court committed a clear or obvious error.

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, but a defendant's right to present relevant evidence is subject to reasonable restrictions." *Wood*, 320 Ga. at 471 (quotation marks omitted). As we have recognized, state-law rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *State v. Burns*, 306 Ga. 117, 122 (2019) (quoting *United States v.*

*Scheffer*, 523 US 303, 308 (1998)). We held above that the trial court did not abuse its discretion by excluding Peavy's expert testimony under Rule 702. See *Burns*, 306 Ga. at 122 ("[A] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," and a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise *inadmissible under standard rules of evidence*." (cleaned up)). And Peavy cites no authority to show how the trial court's enforcement of Rule 702 prevented him from presenting a complete defense. In light of these circumstances, Peavy has failed to establish that the trial court committed a clear or obvious error. See *Wood*, 320 Ga. at 471; *Sconyers v. State*, 318 Ga. 855, 859 (2024) ("For an error to be obvious for purposes of plain error review, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." (cleaned up)). This claim therefore fails.

4. Finally, Peavy argues that the guilty verdicts on his felony murder and aggravated assault counts (Counts 2 and 3) are repugnant because he was found not guilty of possession of a firearm during the commission of a felony, namely aggravated assault (Count 5). In the indictment, Count 5 alleged that Peavy had "within arm's reach of his person, a pistol, a firearm, during the commission of the crime of [a]ggravated [a]ssault … of Hamilton Darwin." He argues that when the jury found him not guilty on that count, the jury necessarily found that he did not have a gun within arm's reach. And if he did not have a gun within arm's reach, then he could not have used that gun to commit the aggravated assault alleged in Count 3 or the felony murder premised on that aggravated assault alleged in Count 2. Accordingly, he argues that the not guilty verdict on possession of a firearm during the commission of an aggravated assault

13

required a not guilty verdict on the aggravated assault and felony murder counts and that those verdicts were repugnant as a result.[6] We disagree.

A repugnant verdict is one in which the jury finds the defendant not guilty on one count and guilty on another count, but where it is clear from the appellate record that the jury reached that verdict by making affirmative findings "that cannot logically or legally exist at the same time." *Montgomery v. State*, 323 Ga. 119, 121 (2025) (quotation marks omitted). Under our precedent, when a verdict is truly repugnant, the guilty verdict must be vacated. Id. But not all inconsistent verdicts are repugnant. Where the jury returns seemingly incompatible verdicts on different counts, but without contradictory affirmative findings, those verdicts are allowed to stand. See *Owens*, 312 Ga. at 216–17. That is because we are not permitted to make inquiries into the jury's deliberation process. See id. We therefore cannot speculate about whether the jury reached the inconsistent verdicts by making findings "that cannot logically or legally exist at the same time" or whether it did so due to mistake, compromise, or lenity. *Feder v. State*, 319 Ga. 66, 69 (2024). To put it simply, repugnant verdicts – those where the guilty verdict must be vacated – occur "in the rare instance where, instead of being left to speculate as to the jury's deliberations, the appellate record makes transparent the jury's rationale." *Guajardo v. State*, 290 Ga. 172, 174 (2011).

Here, the record does not reflect any affirmative findings by the jury as to its rationale in returning a not guilty verdict on the possession of a firearm during the commission of aggravated

---

[6] Neither Peavy nor the State have asked us to revisit the repugnant verdict doctrine in light of *McElrath v. Georgia*, 601 US 87, 95 (2024), and we decline to do so here. See *Ward v. State*, 318 Ga. 884, 896 n.12 (2024).

14

assault count and guilty verdicts on the felony murder and aggravated assault counts. See *Guajardo*, 290 Ga. at 174. In the absence of such affirmative findings, determining the basis for the jury's not guilty verdict on the second firearm possession count and the guilty verdicts on the felony murder and aggravated assault counts "would be based either on pure speculation, or would require inquiries into the jury's deliberation that the courts generally will not undertake." *Feder*, 319 Ga. at 69. See also *Owens*, 312 Ga. at 216–17. We do not know and will not speculate why the jury found Peavy not guilty of possession of a firearm during the commission of an aggravated assault but guilty of felony murder and aggravated assault.[7] Accordingly, Peavy's repugnant verdict claim fails.

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*

---

[7] It is worth noting that the jury did return a guilty verdict on Count 4 of the indictment, which also charged Peavy with possession of a firearm during the commission of a felony and alleged that Peavy had "within arm's reach of his person a pistol, a firearm, during the commission of the crime of Murder[.]"

15